KING, P.J.,
Dissenting.
¶28. With appropriate regard for the majority opinion herein, I dissent as to whether the trial court should have granted a limiting instruction sua sponte. I do not believe the majority’s summation of the facts regarding this issue provides a full and accurate view of the matter.
¶ 29. Perhaps that testimony which best explains the facts surrounding this issue begins with the cross-examination of Linda Anderson by Glenn Rossi, the assistant district attorney, goes through the redirect examination of Ms. Anderson by Mr. Walls, the defense attorney, and ends with what has to be considered an objection by Mr. Walls.
¶ 30. That testimony is as follows:

CROSS-EXAMINATION

BY MR. ROSSI:
Q. Ms. Anderson, did you have a conversation today with Joseph Smith?
A. No, I didn’t.
Q. Do you know who Joseph Smith is?
A. Yes, I do.
Q. Did you tell Joseph Smith that Mr. Walls, the attorney, was trying to get you to lie about what happened out there?
A. No, I didn’t.
Q. Did you have any conversation with Joseph Smith—
MR. WALLS: Your Honor, I’m going to object to that, unless he can prove somebody — that I told somebody to lie. I want him to prove that right now.
MR. ROSSI: Your Honor, I have to ask her first before I can put Joseph Smith on.
*96 THE COURT: Ail right. He’s following procedure. Whether he can follow-up with it or not, I don’t know. The objection is overruled.
MR. ROSSI CONTINUED:
Q. Did you have any conversation with Joseph Smith about that?
A. Today, no. I just spoke to him.
Q. Did you have any conversation with him at all about that, whether today or any other time?
A. No, I did not.
Q. have you spoken to him today?
A. Yes, I did.
Q. When was that?
A. Earlier today when I first got here.
Q. About what time?
A. I don’t know the time.
Q. Well, where were you, and where was he when you spoke to him?
A. He was at the vending machine down there, right there in the hall.
Q. And you said you spoke to him. What did you say to him?
A. I said, “What’s up?” That’s how I speak.
Q. What did he say?
A. He spoke back. He said, “Hi.”
Q. And then what did you say?
A. I was joking with him about some money. I was just really joking. I didn’t say anything but speaking, like I always do when I see him.
Q. And you had no conversation with him about what Mr. Walls wanted you to testify to?
A. No, I did not.
MR. ROSSI: No further Question, Your Honor.
THE COURT: Any redirect?
MR. WALLS: I will never forget that, Your Honor.

REDIRECT EXAMINATION

BY MR. WALLS:
Q. Have I ever asked you to lie for anything in this case or any other place?
A. No, you have not.
Q. Have I asked you what did you know about this case, if anything?
A. yes, you did.
Q. And did you tell me what you knew?
A. Yes, I did.
Q. And is that all I asked you to testify to?
A. Yes, you did.
Q. And the questions that I asked you earlier, were those the questions that I asked you outside?
A. Yes.
Q. And isn’t that what I told you I was going to ask you about, what you just testified about?
A. Yes, sir.
Q. And did I ask you did you know anything else?
A. Yes, sir.
Q. And what did you tell me?
A. No, sir.
MR. WALLS: I have nothing further, Your Honor.
THE COURT: Okay. Any further need of this witness, Mr. Walls?
MR. WALLS: No, Your Honor. And I want to say on the record that I think it’s low of the D.A.—
THE COURT: No, no—
MR. WALLS: — to impugn my integrity in front of the jury.
THE COURT: Hold on. We’re not going to go into that.
MR. WALLS: Your Honor, if he was going to go into that, he should have *97 done it outside the presence of the jury-
THE COURT: Mr. Walls, y’all can have another forum in which you can talk about that, but don’t do it in front of this jury.
¶ 31. The record clearly reveals something more than the benign testimony inferred by the majority opinion. Likewise it also indicates an action that without question extended beyond an attack on the credibility of a witness.
¶ 32. If the purpose of the examination was to call into question the credibility of Ms. Anderson, the prosecution could have done so by asking her if anyone had urged her to lie about what she knew, rather than asking, “Did you tell Joseph Smith that Mr. Walls, the attorney, was trying to get you to lie about what happened out there?”
¶ 33. The question as posed by the prosecution, could only have as its effect, intended or unintended, the public impugning of the integrity of the defendant’s attorney, and by so doing, undermining the defendant’s right to effective representation of counsel.
¶ 34. The majority opinion attempts to circumnavigate this issue by calling it harmless error. I do not believe the error harmless under the circumstances of this case.
¶ 35. This case comes down to a question of credibility. That matter was clear in the minds of the prosecution team. In its closing argument the prosecution made numerous references to the credibility of its witnesses and the lack of credibility of the defense witnesses. Sandwiched between those references were also references to “what Mr. Walls would have you believe.” Also by the prosecutor, “Mr. Walls and his client would have you believe ladies and gentlemen, that that couldn’t happen....”
¶ 36. These actions continued to call into question the credibility of defense counsel, Mr. Walls, and beyond question undermined the right to the effective assistance of counsel.
¶ 37. Under these circumstances, that is not harmless error.
IRVING, J„ JOINS THIS OPINION.